UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

MICHAEL D. PASSMORE,                )
                                    )
                    Plaintiff,      )
                                    )
        v.                          )        No. 2:23-cv-00543-JPH-MKK
                                    )
ZATECKY, et al.,                    )
                                    )
                    Defendants.     )

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR
PARTIAL SUMMARY JUDGMENT AND PROVIDING NOTICE OF INTENT TO
GRANT IN PART SUMMARY JUDGMENT INDEPENDENT OF THE MOTION**

Plaintiff Michael D. Passmore filed this action alleging that Defendants

retaliated against him for engaging in protected First Amendment activity.  Dkt.

28 (Screening Order).  Defendants Zatecky, Phegley, Madden, Hinton, Reedy,

and Williams moved for partial summary judgment, dkt. [42], arguing that Mr.

Passmore failed to exhaust his available administrative remedies as required by

the Prison Litigation Reform Act ("PLRA") before filing this lawsuit.[1]  In

response, Mr. Passmore conceded that Defendant Hinton should be dismissed,

so the motion is **granted** as to Defendant Hinton.  For the reasons below, the

motion is **denied** as to Defendants Zatecky, Phegley, Madden, Reedy, and

Williams (referred to as "Defendants" in the remainder of this Order).

---

[1] Defendant Russ has withdrawn her exhaustion defense, dkt. 45, so the Court does
not discuss Mr. Passmore's claims against her further.

1

# I.
# Summary Judgment Standard

Parties in a civil dispute may move for summary judgment, a way to resolve a case short of a trial.  *See* Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when there is no genuine dispute over any of the material facts, and the moving party is entitled to judgment as a matter of law.  *Id.*; *Pack v. Middlebury Comm. Schs.*, 990 F.3d 1013, 1017 (7th Cir. 2021).  A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit.  *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party.  *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021).  It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder.  *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

# II.
# Factual Background

## A. Allegations of Complaint

Mr. Passmore alleges that Defendant Russ—who does not raise an exhaustion defense—retaliated against him for pursuing litigation against prison officials by wrongfully firing him from his prison job and interfering with his litigation activities.  Dkt. 28.  He also alleges that Defendants retaliated

against him by failing to take corrective action after he complained about Defendant Russ. *Id.*

## B. Grievance Process

The Indiana Department of Correction ("IDOC') has a standardized grievance process that was in place during the time at issue in this lawsuit. Dkt. 42-1 ¶ 5; dkt. 42-2. The process has three steps: formal grievance, appeal to the warden or the warden's designee, and appeal to the Department Grievance Manager. Dkt. 42-2 at 4. As relevant here, matters that must be pursued through the grievance process include: (1) actions of individual staff; (2) acts of reprisal for using the grievance process; and (3) "[a]ny other concerns relating to conditions of care or supervision within the [IDOC] . . . , except as noted in" the grievance policy. *Id.* Matters that may not be pursued through the grievance process include: (1) classification actions or decisions, "which include loss of a job . . . (a separate classification appeals process is in place for this purpose)"; and (2) "[c]ontents of grievance or appeal responses from the Warden/designee or the Department Offender Grievance Manager." *Id.* at 4–5.

## C. Plaintiff's Use of Grievance Process

Mr. Passmore filed multiple grievances about Defendant Russ's conduct, including six grievances arguably related in whole or in part to conduct at issue in this lawsuit. Defendants concede that those grievances were exhausted as to Defendant Russ. Dkt. 43 at 7–12; dkts. 42-4 through 42-9. The designated evidence shows that Defendant Williams denied all of those grievances. Dkt. 42-4 (grievance including complaints about job loss and legal

mail); dkt. 42-5 (grievance including complaints that Defendant Russ canceled a deposition); dkt. 42-6 (grievance including complaints about inability to get remittance slips to send legal mail); dkt. 42-7 (grievance including complaints about Defendant Russ not giving him copies of documents filed with federal court); dkt. 42-8 (grievance including complaints about handling of inmate trust account statement); 42-9 (grievance including complaints about interfering with documents filed with federal court). Defendant Phegley reviewed the first-level appeals of those grievances and found the first-level response to be appropriate. *Id.* Defendant Zatecky concurred with Defendant Phegley, which resulted in denials of the first-level appeals of those grievances. *Id.*

It is undisputed that Mr. Passmore did not file any grievances specifically complaining that Defendants Williams, Phegley, and Zatecky were retaliating against him by ignoring his complaints about Defendant Russ. It is also undisputed that Mr. Passmore did not file any grievances specifically complaining that Defendants Madden and Reedy were retaliating against him by ignoring his complaints about Defendant Russ. However, the designated evidence shows that Defendant Madden signed a form requesting that Mr. Passmore be reclassified out of his job, and Defendant Phegley denied Mr. Passmore's classification appeal of that decision. Dkt. 52 at 3–4.[2] Mr.

---

[2] The signature on the classification appeal is illegible, but Mr. Passmore asserts under penalty of perjury (without contradiction from Defendants) that Defendant Phegley denied the appeal. *See* dkt. 51 at 3.

Passmore also asserts under penalty of perjury that Defendant Reedy was partially responsible for his job loss.  Dkt. 51 at 3.

### III.
### Discussion

The PLRA requires that a prisoner exhaust available administrative remedies before suing over prison conditions.  42 U.S.C. § 1997e(a).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted).  "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate."  *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (citing *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006)).  A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'"  *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). "Because exhaustion is an affirmative defense," Defendants face the burden of establishing that "an administrative remedy was available and that [Plaintiff] failed to pursue it."  *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015).

Defendants argue that Mr. Passmore was obligated to file grievances regarding his claims that Defendants Phegley, Zatecky, Madden, Reedy, and Williams retaliated against him by ignoring his complaints about Defendant Russ, and therefore failed to exhaust administrative remedies as to his claims

against them.  Dkt. 43.  In response, Mr. Passmore argues that he did not have to pursue administrative remedies before bringing those claims because the grievance policy excludes grievance responses and job terminations from the mandatory grievance process.  Dkt. 54.[3]  In reply, Defendants argue that Mr. Passmore was obligated to file grievances regarding: issues related to his job loss under the provisions of the grievance policy allowing grievances about staff actions; the manner in which staff apply policies, procedures, and rules; and any concerns or issues relating to conditions of care or supervision.  Dkt. 55 at 2.  In support of their argument that Mr. Passmore was required to use the grievance process Defendants point to the fact that Mr. Passmore filed grievances related to Defendant Russ.  *Id.* at 5.  They further argue that the grievance process allows inmates to file grievances about staff inaction, so he was obligated to file grievances about Defendants' failure to act in response to Defendant Russ's improper actions.  *Id.* at 2–5.  Mr. Passmore argues that Defendants Phegley, Madden, and Reedy were each responsible in some way for his job loss.

The grievance process states that classification "actions or decisions," including "loss of a job" are not subject to the grievance process.  Dkt. 42-2 at 5 ¶ 5.  The Seventh Circuit has broadly construed this provision as "categoriz[ing] *actions* as grievable or non-grievable without regard for their motivating reasons or downstream consequences.  Firing decisions are

---

[3] Mr. Passmore filed two apparently identical copies of his summary judgment response, dkts. 53, 54; the Court cites to the second one, dkt. 54.

excepted from the administrative process, full stop." *Miles v. Anton*, 42 F.4th 777, 781 (7th Cir. 2022). In *Miles*, the defendants argued that while the loss of a job is exempt from the grievance process, staff actions related to job loss were not and therefore had to be brought through the grievance process. The court flatly rejected this argument, stating "because [the prison official's] firing of Miles is the *action* at the crux of the First Amendment claims, Miles was not required to engage the grievance process before he turned to federal court." *Id.* The court reasoned that "[b]eyond the policy's plain language, it makes practical sense for a grievance regime to be ordered around actions rather than the legal theories used to support or oppose them." *Id.*

Here, Defendants make no attempt to distinguish *Miles*, despite its clear relevance to the issues implicated by Defendants' motion for summary judgment.[4] Regardless, the fact that prison staff accepted and responded to some grievances in which Mr. Passmore complained about Defendant Russ's decision to fire him at best shows that the grievance process is ambiguous, and any ambiguity must be resolved in Mr. Passmore's favor. *Id.* at 781–82 (ambiguity in grievance process must be resolved in inmate's favor). Defendants' arguments as to Defendants Williams and Zatecky and their arguments about Defendant Phegley's denials of Mr. Passmore's grievance appeals fail for similar reasons. As Mr. Passmore argues in his response, the

---

[4] Defendants do not even acknowledge *Miles*. Given its clear relevance, the Court orders counsel to file a statement by February 14, 2025, explaining why they were not obligated to cite *Miles* as relevant authority. *See Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 n.4 (7th Cir. 2021).

grievance process states that the contents of grievance responses cannot be grieved.[5]  In their reply, Defendants do not address the applicability of this provision of the grievance policy, other than to make generalized arguments that Mr. Passmore had to file separate grievances about their failure to correct Defendant Russ's allegedly improper actions.  But the general list of grievable topics in the policy is limited by the list of exceptions, which includes grievance responses.  *See Miles*, 42 F.4th at 780 ("Though Anton's decision to fire Miles was no doubt an 'action of individual staff,' that open-ended and all-encompassing provisions is limited by the more specific . . . exceptions." (cleaned up)).  At best, the policy is ambiguous on this point, so any ambiguity must be resolved in Mr. Passmore's favor.

For these reasons, Defendants have failed to carry their burden to show that Mr. Passmore failed to exhaust administrative remedies as to his claims against them.

## IV.
## Rule 56(f) Notice and Further Proceedings

For the reasons stated above, Defendants' motion for summary judgment, dkt. [42], is **granted in part and denied in part as follows**: (1) it is **granted** as to Defendant Hinton, and all claims against her are **dismissed without prejudice**; and (2) it is **denied** as to Defendants Phegley, Zatecky,

---

[5] The grievance policy states that inmates cannot grieve the "[c]ontents of grievance or appeal responses from the Warden/designee or the Department Offender Grievance Manager."  Dkt. 42-2.  It does not say whether responses from someone else, like a grievance specialist, may be grieved.  So it's at best ambiguous as to whether an inmate can grieve the response to an original grievance from a grievance specialist and, as stated above, any ambiguity must be resolved in Mr. Passmore's favor.

Williams, Madden, and Reedy.  No final judgment will enter at this time.

Further, under Rule 56(f)(1), the Court gives Defendants notice of its intent to grant summary judgment in Mr. Passmore's favor on the issue of exhaustion as to the claims against Defendant Phegley, Zatecky, Williams, Madden, and Reedy.  Defendants have until **February 14, 2025**, to file a statement explaining why they were not obligated to cite *Miles* as relevant authority.  Defendants have **through February 28, 2025,** to show cause why summary judgment should not be granted as to those claims.  Alternatively, Defendants may withdraw their affirmative defense as to those claims by this date. The clerk is directed to terminate Defendant Hinton as a defendant on the docket.

**SO ORDERED**.

Date: 2/7/2025

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHAEL D. PASSMORE
962822
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All electronically registered counsel