UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MICHAEL D. PASSMORE, Plaintiff, | ) | |
| v. | ) | No. 2:23-cv-00543-JPH-MKK |
| ZATECKY PCF Warden, et al., Defendants. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael D. Passmore, an inmate at Putnamville Correctional Facility, pursues First Amendment retaliation claims against officials at Putnamville for interfering with his litigation activities and removing him from a job. Defendants have moved for summary judgment. Dkt. 78. For the reasons below, that motion is **GRANTED in part and denied in part**.

## I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-

finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Fed. R. Civ. P. 56(a), the Court views and recites the evidence in the light most favorable to Mr. Passmore and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. Background

In December 2021, Mr. Passmore was incarcerated at Putnamville. Dkt. 79-4 at 3. Dushan Zatecky was Warden of Putnamville, and Timmy Phegley

was Deputy Warden. *Id.* at 3–4. Jade Reedy was the unit team caseworker, Wyatt Madden was the casework manager, and Terri Russ was a caseworker. *Id.* at 3-5. Caseworker Russ's primary responsibilities included managing inmates, assisting with their case management, developing case planning, and connecting inmates to program opportunities. Dkt. 92 at 202. Chris Williams was the grievance specialist. Dkt. 79-4 at 5.

**B. Dormitory Representative Job**

On December 1, 2021, Mr. Passmore was reclassified to the job of dormitory representative. *Id.* at 18; dkt. 79-1 at 1. He started that job on December 7. Dkt. 79-2. A dormitory representative represents the inmates in the dormitory and attends meetings with administrative supervisors to discuss related issues. Dkt. 92 at 182, 187, 222. Caseworker Russ was Mr. Passmore's supervisor, and Mr. Passmore was expected to notify inmates when Caseworker Russ needed to speak with them, to assist other caseworkers with "getting offenders when they come in the dorm," and to perform other duties as assigned. Dkt. 79-2. Near the beginning of his employment, Caseworker Russ asked Mr. Passmore to come see her every morning and evening.

Mr. Passmore went to Caseworker Russ's office every morning and afternoon that Caseworker Russ was present and asked if she needed assistance when he saw her in the dormitory. Dkt. 79-4 at 27; dkt. 80 at 4-5.[1] Caseworker Russ's office was often locked upon Mr. Passmore's arrival, so he

[1] Defendants designate contrary evidence that Mr. Passmore's check-in with Caseworker Russ the afternoon of December 20, 2021 "was the last time he made any attempt to assist with his job as dorm rep." Dkt. 79-2.

would give a thumbs-up or thumbs-down through the office window, and Caseworker Russ would either gesture back or unlock the door with a task for Mr. Passmore. Dkt. 79-4 at 26. Typically, the task was cleaning her office. *Id.*

**C. Legal Correspondences**

When Mr. Passmore started his job in December 2021, he had five active lawsuits against the Indiana Department of Correction and staff. Dkt. 79-4 at 9. On January 6, 2022, Caseworker Russ brought Mr. Passmore to a downstairs office to copy approximately six hundred documents related to a case he was litigating. *Id.* at 7-8; dkt. 79-3 at 2. Caseworker Russ complained about the waste of time and paper. Dkt. 79-4 at 7-8. Two more reams of paper related to Mr. Passmore's case arrived on January 7, which Caseworker Russ again complained about. *Id.*

**D. Firing**

On the morning of January 10, 2022, Caseworker Russ called Mr. Passmore and removed him from his job as dormitory representative. *Id.* at 8. Mr. Passmore was in the position's probationary period. *Id.* at 23. Caseworker Russ informed Mr. Passmore that he was not doing his job. *Id.* at 11. Mr. Passmore signed a reclassification document. *Id.*

Casework Manager Madden signed a report of classification hearing that day, removing Mr. Passmore from the dormitory representative position. *Id.* at 19-20; dkt. 79-1 at 2. Mr. Passmore later informed Mr. Madden that he felt the firing was out of retaliation for his lawsuits. Dkt. 79-4 at 20-21.

Mr. Passmore filed a classification appeal, writing, "I was doing my job according to requirement of PCR/ISF 094 Policy Shelter Representative. IIN [*sic*] Counselor fired me. It is not a counselor clerk job for Ms. Russ but an alternate dorm rep." Dkt. 79-1 at 3. Deputy Warden Phegley denied Mr. Passmore's classification appeal. *Id.*; dkt. 79-4 at 22.

Mr. Passmore filed a grievance on January 10, alleging that Caseworker Russ's decision to terminate him was in retaliation for his five pending lawsuits against the Indiana Department of Correction and staff. Dkt. 79-3 at 1. Grievance Specialist Williams denied the grievance after contacting Caseworker Russ, who provided a statement that recounted a discussion with Casework Manager Madden about Mr. Passmore's poor job performance and a January 3 work evaluation. *Id.* at 2, 6-7. Deputy Warden Phegley reviewed the appeal and recommended that it be denied, and Warden Zatecky denied it. *Id.* at 3. Mr. Passmore also wrote Caseworker Reedy a letter complaining about being fired for practicing his constitutional rights. Dkt. 92 at 224-25.

Mr. Passmore disputes that he signed the work evaluation form bearing his signature and dated January 10. Dkt. 79-4 at 30. He testified that he never completed such an evaluation for the dormitory representative role. *Id.* at 31. These forms are typically completed when an inmate is terminated from his job. Dkt. 92 at 204.

**E. Deposition**

At 7:30 a.m. on January 25, 2022, Caseworker Russ sent a dorm rep to notify Mr. Passmore that he had an 8:00 a.m. Zoom deposition for another

case. Dkt. 79-4 at 14. At 8:00 a.m., Caseworker Russ informed him that the deposition had been cancelled, and when Mr. Passmore told her that it would "frustrate the case," she responded that "she didn't give a fuck and she didn't care" in a "[v]ery hostile and aggressive" tone. *Id.* at 14–16. The deposition was cancelled because of a miscommunication about whether it would be virtual or in-person; it was rescheduled and occurred several months later. Dkt. 79-3 at 13–15. Depositions are generally arranged through the building secretary. Dkt. 79-4 at 41.

Mr. Passmore filed a grievance alleging that Caseworker Russ cancelled the deposition out of retaliation. Dkt. 79-3 at 9-14. Grievance Specialist Williams denied the grievance after communicating with Caseworker Russ and another staff member, explaining that it was cancelled because of a mix-up with Classification about whether it was in person or virtual. *Id.* Mr. Passmore appealed, which Deputy Warden Phegley reviewed and Warden Zatecky denied. *Id.*

**F. Additional Grievances**

Caseworker Russ once told Mr. Passmore that she did not have remittance slips and told him to go instead to another counselor or an officer, though they can only be acquired from a counselor. Dkt. 79-4 at 17, 43-44. Mr. Passmore filed a grievance about her failure to provide remittance slips on January 27. Dkt. 79-3 at 15. Grievance Specialist Williams investigated and denied the grievance, in part because Caseworker Russ indicated that she gave Mr. Passmore one remittance slip and told him he could return for another. *Id.*

at 18, 20. Caseworker Russ also told Grievance Specialist Williams that she complied with the open-door policy. *Id.* at 18. Grievance Specialist Williams characterized Mr. Passmore's grievance as "frivolous, repetitive, [and] retaliatory." *Id.* Deputy Warden Phegley reviewed Mr. Passmore's grievance appeal, which Warden Zatecky denied. *Id.*

Also on January 27, Mr. Passmore filed a grievance about Caseworker Russ's failure to deliver and disposal of filings in another case, alleging that he had not received any filings in any of his cases in three weeks. *Id.* at 22. Caseworker Russ reported to Grievance Specialist Williams that she distributes all legal mail and filings when received and that she does not throw away mail. *Id.* at 23. Grievance Specialist Williams denied the grievance and Deputy Warden Phegley reviewed Mr. Passmore's appeal, which Warden Zatecky denied. *Id.* at 23-25.

Finally, on January 28, Mr. Passmore filed a grievance that Caseworker Russ had removed the outer sheets from court filings prior to delivery. *Id.* at 28. He attached a document as an example of an outer sheet missing from his filings, *see id.* at 33, which Grievance Specialist Williams determined was not from a court and was instead a page from the law library. *Id.* at 29. Caseworker Russ disputed the allegations, Grievance Specialist Williams denied the grievance, and Deputy Warden Phegley recommended denying the appeal, which Warden Zatecky denied. *Id.* at 29-31.

Mr. Passmore designates fifteen inmate declarations indicating that Caseworker Russ did not provide grievance forms, kept her door locked,

improperly handled remittance slips, failed to answer requests for interview, was often absent, and was generally unhelpful and rude. Dkt. 92 at 56-72. These declarations also describe Mr. Passmore as an effective dormitory representative, both prior to his firing and after he became a dormitory representative again in June 2023. *Id.* at 56-72, 172.

## III.
## Discussion

### A. Applicable Law

To succeed on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

Defendants do not dispute the first element, that Mr. Passmore engaged in protected First Amendment activity by filing several lawsuits against the Indiana Department of Correction and employees. Dkt. 80 at 9.

For the second element, whether allegedly retaliatory conduct "would likely deter a person of ordinary firmness" from exercising his First Amendment

rights is an objective test, *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020), and the standard "does not hinge on the personal experience of the plaintiff," *Holleman v. Zatecky*, 951 F.3d 873, 880 (7th Cir. 2020) ("Furthermore, the harsh realities of a prison environment affect our consideration of what actions are sufficiently adverse.").

The motivating factor element "amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013). Nonetheless, "[a]llegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech." *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999).

"Suspicious timing alone will rarely be sufficient to create a triable issue because suspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment." *Manuel*, 966 F.3d at 680–81 (cleaned up) (standing alone, fact that inmate's cell was shaken down nine minutes after he engaged in First Amendment protected activity could not create triable issue of fact as to retaliation claim because another, non-retaliatory motive existed).

**B. Defendant Russ**

Mr. Passmore bases his retaliation claim against Caseworker Russ on three alleged adverse actions: (1) his firing; (2) the deposition cancellation; and (3) interference with litigation documents and other obstructions.

**1. Firing**

While Mr. Passmore does not have a constitutional right to a prison job, "an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C. §] 1983 even if the act, when taken for different reasons, would have been proper." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). A reasonable jury could find that being fired from a prison job and losing the associated income could dissuade a reasonable person from engaging in future First Amendment activity. *See Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015).

While Defendants designate evidence that Mr. Passmore was not fulfilling a dormitory representative's job duties, Mr. Passmore designates evidence that he was doing so, including going to Caseworker Russ's office twice per day as requested. As the nonmoving party, Mr. Passmore receives "the benefit of conflicting evidence and reasonable inferences." *Stockton v. Milwaukee County*, 44 F.4th 605, 614 (7th Cir. 2022). The designated evidence therefore allows a reasonable jury to find that Mr. Passmore was adequately performing his job duties yet was fired days after Caseworker Russ expressed frustration about the voluminous legal documents she had to copy for him. From this evidence, a reasonable jury could conclude that Mr. Passmore's lawsuits against IDOC and

its employees "was at least a motivating factor" in Caseworker Russ's decision to fire Mr. Passmore. *Manuel*, 966 F.3d at 680–81 (The "motivating factor" element may be met with circumstantial evidence, including "suspicious timing, ambiguous statements, behavior, or comments directed at others in the protected group."); *Stockton*, 44 F.4th at 614. Mr. Passmore's designated evidence that he did everything the job required also allows a reasonable jury to find that Caseworker Russ's proffered "non-retaliatory motive" of poor job performance "is pretextual or dishonest." *Manuel*, 966 F.3d at 680–81.

Caseworker Russ therefore is not entitled to summary judgment on Mr. Passmore's retaliation claim based on his firing.

**2. Deposition Cancellation**

For the cancellation of Mr. Passmore's deposition, the designated evidence shows that the Classification department, rather than Caseworker Russ, was responsible for the deposition. *See Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023) ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."). The designated evidence also shows that the deposition was cancelled because of a mix-up about whether it was in-person or virtual, and was successfully rescheduled.

Mr. Passmore therefore has not designated evidence supporting a *prima facie* case that Caseworker Russ cancelled the deposition in violation of the First Amendment. No reasonable jury could find from the designated evidence that Caseworker Russ played a role in cancelling the deposition, or that it was

retaliatory, so she is entitled to summary judgment based on the deposition cancellation. *See Manuel*, 966 F.3d at 680.

**3. Document Interference**

Mr. Passmore alleges that Caseworker Russ refused to deliver and tampered with legal mail, refused to hold office hours, and failed to supply remittance slips and grievance forms. This claim requires that Mr. Passmore's protected activity "was at least a motivating factor" for Caseworker Russ's actions. *Manuel*, 966 F.3d at 681. The designated evidence, however, is that Caseworker Russ's actions affected all inmates in the dorm, rather than being directed at those who engaged in litigation. Since Caseworker Russ's actions were not specifically directed at inmates like Mr. Passmore who engaged in litigation, and there is no designated evidence connecting those actions to protected activity, no reasonable jury could find that she was motivated by Mr. Passmore's litigation activity. *See Massey v. Johnson*, 457 F.3d 711, 720–21 (7th Cir. 2006) (affirming summary judgment because no reasonable jury could find that "campaign of petty harassment" that did not single out the plaintiff was "designed to deter" protected activity).

As for Mr. Passmore's allegation that Caseworker Russ removed a sheet from Mr. Passmore's legal packets and failed to distribute other legal packets, the designated evidence is that the missing sheets were internal Indiana Department of Correction cover sheets and not papers from a court. Mr. Passmore does not designate evidence of any specific filings he did not receive or that his underlying litigation was ever affected. *See Holleman*, 951 F.3d at

881 ("[I]ncidental changed circumstances" is not enough to deter protected conduct.). Without designated evidence that any alleged actions affected Mr. Passmore's litigation, no reasonable jury could find that a reasonable person would be deterred from pursuing their legal claims. *See Massey*, 457 F.3d at 720–21 ("trivial" accusations of harassment would not deter protected activity); *Holleman*, 951 F.3d at 881. Caseworker Russ is therefore entitled to summary judgment on the retaliation claim based on document interference.

**C. Remaining Defendants**

As to Warden Zatecky, Deputy Warden Phegley, Casework Manager Madden, Caseworker Reedy, and Grievance Specialist Williams, Mr. Passmore's allegations are based on their authority over Caseworker Russ, approval of Caseworker Russ's firing of Mr. Passmore, and/or processing of Mr. Passmore's grievances and letters.

To be liable, each defendant must have been personally involved. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Specifically, "[t]he plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.* Section 1983 does not recognize vicarious liability, or a supervisor's liability for a subordinate's conduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). Mere "knowledge of a subordinate's misconduct is not enough for liability." *Vance v. Rumsfeld*, 701 F.3d 193, 203 (7th Cir. 2012) (*en banc*). The remaining defendants are thus entitled to summary judgment to the extent that Mr. Passmore seeks relief solely on the basis that they supervised Caseworker Russ.

The designated evidence also does not allow a reasonable jury to find that any of these defendants themselves retaliated against Mr. Passmore. First, Casework Manager Madden signed a report of classification hearing formalizing Mr. Passmore's removal from the dormitory representative position, and Deputy Warden Phegley denied his classification appeal. Mr. Passmore has not designated evidence that supports a causal link between this limited involvement in the dismissal and Mr. Passmore's litigation activity. Instead, the designated evidence reflects that Mr. Passmore informed Casework Manager Madden that he suspected retaliation *after* he signed the report of classification hearing. And when Mr. Passmore appealed, he alleged that he had been doing his job properly, not that he'd been retaliated against. Dkt. 79-1 at 3. Casework Manager Madden and Deputy Warden Phegley are therefore entitled to summary judgment on this claim. *See Manuel*, 966 F.3d at 680.

Next, Mr. Passmore alleges retaliation in Defendants' denials of his grievances and Caseworker Reedy's inaction following a letter accusing Caseworker Russ of retaliation. The designated evidence reflects that all of Mr. Passmore's grievances were investigated and that Caseworker Russ provided non-retaliatory explanations for her actions that the other Defendants accepted. An official who merely reviews a grievance cannot be liable for the conduct forming the basis of the grievance. *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). "[I]naction following receipt of a complaint about someone else's conduct is [insufficient]." *Est. of Miller by Chassie v. Marberry*, 847 F.3d 425, 428 (7th Cir. 2017). In other words, regardless of Caseworker Russ's

underlying actions, no reasonable jury could find that Grievance Specialist Williams, Deputy Warden Phegley, and Warden Zatecky were personally motivated by retaliatory animus when they denied Mr. Passmore's grievances and grievance appeals after a reasonable investigation given their positions. *See Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005). They are thus entitled to summary judgment.

Finally, Caseworker Reedy's failure to act on Mr. Passmore's letter amounts only to "inaction following receipt of a complaint about someone else's conduct[.]" *Est. of Miller by Chassie*, 847 F.3d at 428. Mr. Passmore has not designated evidence of any other relevant actions by Caseworker Reedy, so she too is entitled to summary judgment.

## IV.
## Conclusion

Defendants' motion for summary judgment, dkt. [78], is **DENIED** on Mr. Passmore's First Amendment retaliation claim against Caseworker Russ for firing Mr. Passmore, and is otherwise **GRANTED**. Because all claims against Warden Zatecky, Deputy Warden Phegley, Casework Manager Madden, Caseworker Reedy, and Grievance Specialist Williams are dismissed, the **clerk is directed** to terminate them as defendants on the docket.

The Court prefers that Mr. Passmore be represented by counsel for the remainder of this action. Thus, the Court reconsiders its previous order denying Mr. Passmore's motion for counsel, dkt. [12], and finds it should be granted. The Court will attempt to recruit counsel to assist Mr. Passmore through final

judgment. The magistrate judge is asked to hold a telephonic status conference upon appointment of counsel if counsel is recruited.

**SO ORDERED.**

Date: 9/30/2026

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHAEL D. PASSMORE
962822
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

All electronically registered counsel

Magistrate Judge M. Kendra Klump